UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: K&L TRAILER LEASING, INC., Debtor, | ) | |
| FIRST MIDWEST EQUIPMENT FINANCE, CO., Appellant, | ) | |
| v. | ) | No.: 3:25-CV-158-TAV-JEM |
| GREENEVILLE FEDERAL BANK, Appellee. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on appellant's appeal of United States Bankruptcy Judge Suzanne Bauknight's decision in *In re K&L Trailer Leasing Inc.*, Case No. 3:20-BK-31620-SHB, Adv. No. 3:23-AP-03004-SHB (Bankr. E.D. Tenn. Mar. 31, 2025). The parties have filed briefs [Docs. 4, 5], and appellant filed a reply brief [Doc. 7].[1] For the reasons discussed *infra*, Judge Bauknight's decision will be **REVERSED**, and this action will be **REMANDED** for further proceedings.

[1] The Court finds it unnecessary to hear oral argument before resolving this appeal because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8019(b)(3).

## I. Background[2]

### A. Underlying Facts

At all times relevant to the bankruptcy proceeding, K & L Trailer Sales and Leasing, Inc. ("Sales") and K & L Trailer Leasing ("Leasing") were Tennessee companies with Kris Fellhoelter serving as President and general manager for both [Doc. 6-10, pp. 10 n.21, 25]. On October 1, 2010, a Revolving Loan Agreement ("Loan Agreement") was executed between Greeneville Federal Bank ("GFB")[3] and Sales, "through which GFB issued a floor-plan line of credit to Sales for its big rig trailers" [Doc. 6-10, p. 10; *accord* Doc. 6-1, pp. 38–60]. Kris Fellhoelter, Amy Fellhoelter, Marvin Fellhoelter, Linda Fellhoelter, Fellhoelter Enterprises, LLC, and Leasing signed the Loan Agreement as guarantors [Doc. 6-10, p. 10; Doc. 6-1, p. 55]. Also on October 1, 2010, GFB and Sales executed a Security Agreement, which incorporated by reference the Loan Agreement [Doc. 6-10, p. 10; Doc. 6-1, pp. 23–36].

Under the Security Agreement, GFB was granted a security interest in virtually all assets of Sales, "including but not limited to all current and after-acquired inventory" [Doc. 6-10, pp. 10–11; *accord* Doc. 6-1, pp. 34–35]. Furthermore, the Security Agreement provided that:

> (f) <u>Transfers and Other Liens</u>. Without the prior written consent of Bank, the Grantor will not (i) sell, assign (by operation of law or otherwise), exchange, or otherwise dispose of any of the Collateral (except for sale or

---

[2] In its memorandum opinion on appellee's motion for summary judgment, the bankruptcy court concluded that the allegations in appellee's Amended Complaint must be taken as true because appellant failed to answer such allegations [*See* Doc. 6-10, pp. 7–8].

[3] The appellee in this instant appeal.

> other use of inventory in the ordinary course of business); or (ii) create or suffer to exist any lien, security interest or other charge or encumbrance upon or with respect to any of the Collateral except for the security interest created by this Agreement and except for any security interest specifically disclosed in Exhibit "A," attached hereto.

[Doc. 6-10, p. 11; Doc. 6-1, p. 27]. The Security Agreement also stated that all terms used therein "are defined in the Loan Agreement or in Article 9 of the Uniform Commercial Code ("UCC") . . . of Tennessee, as now or hereafter in effect, and which are not otherwise defined herein shall have the same meanings herein as set forth therein" [Doc. 6-10, p. 12; Doc. 6-1, p. 23].[4] On October 4, 2010, GFB filed with the Tennessee Secretary of State a UCC-1 Financing Statement reflecting its security interest, which was continuously retained [Doc. 6-10, p. 11; Doc. 6-1, pp. 13–15].

In 2015, First Midwest Equipment Finance Co. ("FMEF")[5] financed the purchase by Leasing[6] of five trailers ("Subject Trailers") from Sales via two Equipment Financing Agreements ("EFAs") [Doc. 4, p. 11; Doc. 6-10, p. 12; Doc. 6–6, pp. 38–43; Doc. 6-7, pp. 1–3]. Kris Fellhoelter executed the EFAs as President of Leasing, and Sales, through Mr. Fellhoelter, executed Guaranties for Leasing's debt under both EFAs [Doc. 6-10, p. 12; Doc. 6-6, pp. 40, 43]. FMEF's lien as to Leasing on the Subject Trailers was noted on the certificates of origin [Doc. 6-10, p. 13 n.27; Doc. 6-2, pp. 138, 142, 147, 152, 156]

---

[4] Chapters One through Nine of Title 47 of the Tennessee Code "shall be known and may be cited as the Uniform Commercial Code." Tenn. Code Ann. § 47-1-101(a).

[5] The appellant in this instant appeal.

[6] At all times relevant, Leasing was in the business of leasing big rig trailers [Doc. 6-10, p. 10 n.21].

and the certificates of title [Doc. 6-10, p. 13; Doc. 6-6, pp. 46–50; Doc. 4, p. 11].[7] FMEF also filed UCC-1 Financing Statements with the Tennessee Secretary of State regarding the Subject Trailers [Doc. 6-10, pp. 13–14; Doc. 6-6, pp. 43–44]. Ultimately, based on these details and other information in the record, the bankruptcy court concluded that FMEF knew that Sales transferred the Subject Trailers to Leasing [Doc. 6-10, pp. 13–14].

On June 29, 2020, Leasing filed its Chapter 11 bankruptcy petition [Doc. 6-10, p. 2 n. 2; Doc. 4, p. 11]. A Chapter 11 Trustee was appointed on July 8, 2020 [Doc. 6-10, p. 2 n.2]. After his appointment, the Trustee sought leave to sell the remaining trailers in Leasing's estate, which included the Subject Trailers [Doc. 4, p. 11]. The bankruptcy court authorized this course of action, the Trustee sold the Subject Trailers, and the Trustee paid the proceeds to FMEF [*Id.*; Doc. 6-10, p. 2].

**B. Underlying Proceeding and Ruling**

On January 9, 2023, GFB initiated an adversary proceeding, from which this instant appeal stems, and on March 9, 2023, GFB amended its complaint [Doc. 6-10, p. 3; Doc. 6-1; Doc. 4, p. 11]. Via its complaint, GFB sought determination by the bankruptcy court that its "properly perfected inventory lien relating to [Sales] gives it priority over the $72,900.00 in proceeds from the sale by the Chapter 11 Trustee of [the Subject Trailers] that Sales transferred to [Leasing] and for which [FMEF] held properly perfected liens" [Doc. 6-10, p. 2]. In turn, GFB sought to recover the relevant proceeds from FMEF [*Id.*].

[7] To note, FMEF's predecessor, i.e., FMEF's assignor, is included as the lienholder [Doc. 6-10, p. 13 n.27; Doc. 6-2, pp. 138, 142, 147, 152, 156; Doc. 6-6, pp. 46–50; Doc. 4, p. 12].

On November 9, 2023, GFB moved for summary judgment [*Id.* at 3; *see* Doc. 6-2]. On March 31, 2025, the bankruptcy court granted GFB's motion [Doc. 6-10, p. 30; Doc. 6-11]. Making such ruling, the bankruptcy court concluded that:

> secured transactions principles preserved GFB's properly perfected inventory lien when Sales transferred GFB's collateral to Leasing in transactions that were not in the ordinary course of business such that GFB's security interest in the Subject Trailers had priority over FMEF's security interest in the same trailers, and that GFB's priority continues in the proceeds from the Chapter 11 Trustee's sale of the Subject Trailers

[Doc. 6-10, pp. 2–3]. In further detail, the bankruptcy court explained that, under Tennessee Code Annotated § 47-9-311(d), "GFB's only method of perfecting its lien on the inventory of Sales was by the filing of a financing statement" [*Id.* at 16 (quoting *Greeneville Federal Bank, FSB v. Fellhoelter* (*In re K&L Trailer Leasing, Inc.*), 630 B.R. 81, 87 (Bankr. E.D. Tenn. 2021) (hereinafter "*GFB I*")]. Therefore, GFB's security interest in the trailer-inventory of Sales was continuously perfected from the date GFB filed its UCC-1 Financing Statement [*Id.* (quoting *GFB I*, 630 B.R. at 87)].

As relevant in this matter, the bankruptcy court noted that the general rule concerning the disposition of collateral contrary to a security party's security is Tennessee Code Annotated § 47-9-315(a) [*Id.*]. This rule, the bankruptcy court wrote, coordinates with § 47-9-507(a) "to make clear that the secured party's perfection is uninterrupted by disposition of the collateral when section 47-9-315(a) applies to continue the security interest" [*Id.* at 17]. There are, of course, exceptions to the general rule, the bankruptcy court noted [*Id.*]. For example, "if a secured party entrusts goods subject to the creditor's security interest to a merchant who deals in goods of that kind,

the merchant has the power to transfer all rights of the creditor 'to a buyer in the ordinary course of business'" [*Id.* (quoting *GFB I*, 630 B.R. at 87)].

FMEF argued that the Subject Trailers were no longer inventory when it filed and perfected its direct lien on the Subject Trailers, but the bankruptcy court was not convinced [*Id.* at 18]. The bankruptcy court explained that "only two exceptions could exist to change the general rule that a perfected security interest continues in collateral that is transferred: (1) sale of inventory to a buyer in the ordinary course of business under section 47-2-403(a), as expressly referenced in section 47-9-315(a), or (2) the secured party's authorization of the disposition free of the security interest under 47-9-315(a)(1)" [*Id.* at 19]. And GFB argued that the first exception did not apply "because the transfers of the Subject Trailers by Sales to Leasing were not to a buyer in the ordinary course of business under section 47-2-403(2)" [*Id.*]. Specifically, GFB claimed that Leasing was not a buyer in the ordinary course because Leasing did not buy "without knowledge that the sale violates the rights of another person in the goods" [*Id.* at 20 (citing Tenn. Code Ann. § 47-1-209(9))].

Citing to a series of cases [*id.* at 20–25], the bankruptcy court detailed occasions in which other courts had determined that a purchaser was not a "buyer in the ordinary course of business." In three of the cases, a key factor was that the relationship between the buyer and seller were too intertwined, e.g., the buyer and seller companies shared officers, shareholders, employees or the buyer company owned the seller company [*Id.* at 20–22]. The bankruptcy court noted that other creditors of Leasing had "attempted to

rely on 47-9-320[8] to assert that Kris Fellhoelter's knowledge of GFB's security interest does not prevent Leasing from taking trailers free of that interest" [*Id.* at 25]. But this argument, the bankruptcy court stated, conflates two provisions of the UCC:

> Certainly, knowledge of a perfected security interest does not prevent a buyer from being a buyer in the ordinary course of business, but a buyer may not be a buyer in the ordinary course of business unless the buyer is "without knowledge that the sale violates the rights of another person in the goods." Tenn. Code Ann. § 47-1-201(9).

[*Id.*].

Turning back to the proceeding here, the bankruptcy court found that "the undisputed facts—namely, the Security Agreement and the Revolving Loan Agreement—are unambiguous concerning GFB's rights and Sales's obligations and establish that Leasing was not a buyer of the Subject Trailers in the ordinary course of business" [*Id.*]. In so finding, the bankruptcy court reiterated that the Loan Agreement and the Security Agreement between GFB and Sales were signed by Kris Fellhoelter [*Id.*]. And Kris Fellhoelter also signed the certificates of origin to transfer ownership of three of the Subject Trailers from Sales to Leasing, and Linda Fellhoelter signed for a fourth [*Id.* at 25–26; *see* Doc. 6-2, pp. 138, 142, 147, 156]. Additionally, the agreements between GFB and Sales contained multiple provisions that protected GFB's lien in Sales's inventory, including the requirement of express written consent from GFB for Sales to dispose of any of GFB's collateral other than by a sale of inventory in the ordinary course of business [Doc. 6-10, p. 26]. Furthermore, the Security Agreement

[8] "[A] buyer in ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." Tenn. Code Ann. § 47-9-320(a).

contained a provision "against any waiver of GFB's rights by any failure of GFB to exercise or delay in exercising any right" [*Id.*]. Finally, the Loan Agreement defined "Ordinary Course of Business" and expressly authorized an "occasional sale" of inventory to another dealer, "but only if the dealer 'is not a Related Person'" which clearly included Leasing and Kris Fellhoelter [*Id.*; Doc. 6-1, pp. 59–60].

Based on all this, the bankruptcy court found that "the record indisputably establishes that Kris Fellhoelter and Leasing were *not* 'without knowledge that the sale violate[d] the rights of another person in the goods,' Tenn. Code Ann. § 47-1-201(9), because GFB did not actively release its inventory lien on the Subject Trailers" [Doc. 6-10, p. 27 (emphasis in original)]. "Thus, Leasing was not a buyer of the Subject Trailers in the ordinary course of business" [*Id.*]. The bankruptcy court further noted that FMEF was not without an ability to protect itself as it could have easily inquired as to Leasing's source of title, especially given the "open and notorious relationship between Sales and Leasing" [*Id.* at 27–28].

As a final matter, the bankruptcy court addressed a novel argument FMEF presented as one of the multiple creditors of Leasing [*Id.* at 29]. Specifically, FMEF argued that it held a purchase-money-security-interest ("PMSI") in the Subject Trailers [*Id.*]. In response, GFB argued that the transfer of the Subject Trailers was not in the ordinary course of business, and therefore its perfected inventory lien was unaffected by the transfers, particularly as "FMEF did not give notice to GFB as required by Tennessee Code Annotated § 47-9-324 before Leasing took possession of the Subject Trailers" [*Id.*;

Doc. 6-9, p. 10]. Section 47-9-324 provides an exception to the normal rule that priority is established by the first to perfect for PMSIs in inventory collateral that is already subjected to a prior perfected security interest [Doc. 6-10, p. 29]. But, the bankruptcy court found, this provision could not apply to FMEF as the "undisputed facts establish that FMEF did not give the required notice for its PMSI to have priority over GFB's inventory lien" [*Id.*].

Accordingly, and based on all the above, the bankruptcy court found summary judgment in favor of GFB [*Id.* at 30]. Appellant now appeals the bankruptcy court's decision [Doc. 1].

## II. Standard of Review

District courts have jurisdiction to review appeals from final judgments, orders, and decrees of judges of United States bankruptcy courts. *See* 28 U.S.C. § 158(a). On appeal, "[t]he bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de novo." *In re Miller Parking Co., LLC*, 510 B.R. 123, 128 (E.D. Mich. 2014) (first quoting Fed. R. Bankr. P. 8013; and then citing *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935-36 (6th Cir. 2010)). It appears to the Court that the issue presented here is purely legal, and thus, a de novo standard of review should apply.

## III. Analysis

As noted, the instant appeal regards the bankruptcy court's decision on appellee's motion for summary judgment. Federal Rule of Civil Procedure 56(a) provides that

"[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw "all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party bears the burden of establishing that no genuine issues of material fact exist and may meet this burden by affirmatively proving its case or by highlighting the absence of support for the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There must be more than a "mere scintilla of evidence" to withstand a motion for summary judgment. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007) (citation omitted). And any genuine issue of fact must be material; that is, it must involve "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The Court may not weigh the evidence or assess credibility; its role is

limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Id.* at 249.

**A. Parties' Briefing**

Appellant FMEF raises one issue on appeal: whether the bankruptcy court erred in finding that GFB's properly perfected lien was superior and therefore attached to the proceeds resulting from the sale of the Subject Trailers that were originally sold from Sales to Leasing and for which FMEF held properly perfected liens on as evidenced by the notation on the certificates of title [Doc. 4, p. 9].

In its brief, appellant explains that while the "dominant perfection method is filing a financing statement in the jurisdiction where the debtor is located[,]" collateral covered by a certificate-of-title statue "generally requires that the security interest be perfected by compliance with that statute" [Doc. 4, p. 17 (citing Tenn. Code Ann. § 47-9-311(a)(2))]. However, when collateral subject to a certificate-of-title statute is inventory "held for sale or lease by a person in the business of selling goods of that kind[,]" then a financing statement is needed to perfect [*Id.* at 18 (citing Tenn. Code Ann. § 47-9-311(d))]. Appellant submits that what is key to this case is that § 47-9-311(d) only applies "when the debtor is in the business of *selling* goods of that kind" and not when the debtor is in the business of leasing [*Id.* at 19–20 (emphasis in original) (citing Tenn. Code Ann. § 47-9-311 cmt. 4)].

Appellant submits that the bankruptcy court clearly "understood these rules but nevertheless chose to take a different direction[,]" specifically in its reliance on

§ 47-9-507(a), which, in pertinent part, states that "[a] filed financing statement remains effective with respect to collateral that is sold . . . or otherwise disposed of and in which a security interest . . . continues" [*Id.* at 20]. The bankruptcy court, appellant contends, relied on § 47-9-507(a) to conclude that appellee GFB's security interest remained perfected by its filed financing statement "despite the fact that filing ceased to be an effective method to perfect" [*Id.*]. Appellant explains that while § 47-9-507(a) appears to support the bankruptcy court's conclusion, "that is so only when that provision is read alone, out of context, and divorced of any reference to Article 9's underlying principles" [*Id.* at 21].

In support of this argument, appellant first asserts that § 47-9-507(a) is not a perfection rule but rather a filing rule [*Id.*]. And this is obvious from the text of the provision which does not refer to perfection at all, providing instead for when a filed financing statement "remains effective" [*Id.* (comparing the language of § 47-9-507(a) to other Article 9 provisions, e.g., § 47-9-311(b), that use the phrase "remains perfected")]. Appellant argues that the continued efficacy of a financing statement "has no relevance to a security interest that can no longer be perfected by a filed financing statement, as was true in this case after . . . Sales sold the trailers to . . . Leasing" [*Id.* at 22].

Appellant also contends that the Official Comments to §§ 47-9-507 and 47-9-311 illustrate the bankruptcy court's error [*Id.*]. For example, Comment 3 to § 47-9-507 states that "[s]ubsection (a) addresses only the sufficiency of the information contained in the financing statement. A disposition of collateral may result in loss of perfection for

other reasons" [*Id.* at 22–23]. Appellant submits that this comment provides an example "in which a filed financing statement will not continue to remain effective *to perfect* the security interest after the collateral is transferred: when the transferee is located in another jurisdiction" [*Id.* at 23 (emphasis in original)]. Admittedly, appellant states, that example does not apply here, but it "nevertheless proves the limited role that § 47-9-507(a) provides" [*Id.*].

Finally, appellant contends that the bankruptcy court's decision is "inconsistent with the policies underlying Article 9 and Tennessee's certificate-of-title statute" [*Id.* at 24]. Appellant acknowledges that, under its position, appellee GFB "loses perfection instantaneously upon the sale of the goods to anyone not in the business of selling the goods" but notes that this immediate loss of perfection could occur in other situations [*Id.*]. More concerning, appellant argues, is that the bankruptcy court's decision "leads to very problematic results" [*Id.*]. For example, a lender could have a security interest in a used car dealer's inventory and could have perfected such interest via a filed financing statement [*Id.*]. If the dealer sold the car to a buyer not in the ordinary course of business, the security interest, as the bankruptcy court suggests, would remain perfected "despite never being noted on the car's certificate of title" [*Id.* at 25]. Thus, if a person later wanted to later acquire rights in the car from the buyer, the person "would have no ready means of determining that there was an existing perfected security interest in the car" [*Id.*].

In its responding brief,[9] appellee argues that the bankruptcy court correctly found that its "properly perfected security interest in the five . . . Subject Trailers had priority over the subsequent security interest acquired by the appellant" [Doc. 5, p. 17 (emphasis omitted)]. As an initial matter, appellee notes that appellant cites to no case law in support of appellant's interpretation of the law nor does appellant assign criticism to the authorities cited by the bankruptcy court [*Id.* at 13–14, 26]. Moving to its substantive arguments, appellee first contends that Tennessee Code Annotated § 47-9-507(a) is, despite appellant's argument otherwise, a perfection rule because "the filing of a financing statement is itself the means of perfecting a security interest" [*Id.* at 27]. As to appellant's assertion that the bankruptcy court's decision is inconsistent with the UCC's Official Comments, appellee simply submits that the analogies appellant seeks to draw come up short as they relate to provisions which "have no application to the facts of this case" [*Id.* at 28].

Appellant, in its reply brief, contends that appellee has failed to specifically address the issue of priority in its response, merely relying on what appellant contends is the flawed reasoning of the bankruptcy court [Doc. 7, p. 4]. Appellant also notes that none of the cases cited by the bankruptcy court "deal with [the] limited issue presented on this appeal and most do not deal with titled property like the trailers at issue in this proceeding" [*Id.* at 5]. Finally, appellant submits that the bankruptcy court in this case is the only court known to have ruled that Tennessee Code Annotated § 47-9-507 "applies

[9] To note, appellee's brief largely summarizes and quotes from the bankruptcy court's memorandum on its motion for summary judgment [Doc. 5, pp. 17–27, 29–33].

after the filing of a financing statement ceases to be an effective perfection method" [*Id.* at 6].

**B. Issue on Appeal**

As expressed by appellant, the core issue on appeal is the effectiveness of GFB's filing statement after the disposition of the collateral at issue, i.e., the Subject Trailers. The parties do not appear to dispute that when Sales had the Subject Trailers as part of its inventory, GFB had a perfected security interest in such trailers because it had a filed financing statement. *See* Tenn. Code Ann. 47-9-311(a)(2)(A), (d). Additionally, the parties do not appear to dispute that FMEF had certificates of title for each of the Subject Trailers, each of which reflects its lien, at the time the Subject Trailers were purchased [*See* Doc. 6-10, p. 13]. Thus, the only issue is whether, as the bankruptcy court so concluded, GFB's perfected security interest continued such that it would be superior in priority to FMEF's perfected security interest.

For coherency, but not to belabor the point, the Court reiterates that the filing of a financing statement is not effective to "perfect a security interest in property subject to . . . "[a] certificate-of-title statute of this state, covering . . . trailers, . . . which provides for a security interest to be indicated on a certificate of title as a condition or result of perfection." Tenn. Code. Ann. § 47-9-311(a)(2)(A). But "[d]uring any period in which collateral subject to a statute specified in subdivision (a)(2) is inventory held for sale or lease by a person or leased by that person as lessor and that person is in the business of

selling goods of that kind," Tennessee Code Annotated § 47-9-311 "does not apply to a security interest in that collateral created by that person." *Id.* § 47-9-311(d).

When collateral is disposed of, by sale, lease, exchange, or another means, a security interest continues except as otherwise provided in Chapter 9, except as otherwise provided in Tennessee Code Annotated § 47-2-403(2), or unless "the secured party authorized the disposition free of the security interest[.]" *Id.* § 47-9-315(a); *see id.* cmt. 2 ("This Article contains several provisions in which a transferee takes free of a security interest[.]"). As appellant points out, before engaging with the exceptions to the general rule regarding security interest continuation, the bankruptcy court relies on Tennessee Code Annotated § 47-9-507(a) to maintain that GFB's filed financing statement "remain[ed] effective with respect to the collateral that [was] sold," i.e., the Subject Trailers. In other words, the bankruptcy court found that § 47-9-507(a) sustained the perfection of GFB's filed financing statement despite the fact that § 47-9-311(d) was no longer applicable. Content then, that nothing rendered GFB's filed financing statement ineffective, the bankruptcy court carried on, examining the exceptions notated in § 47-9-315(a) and ultimately concluding that none applied.[10]

The bankruptcy court did, briefly, address appellant's argument that an inventory lien would not survive the transfer at issue in this case [*See* Doc. 6-10, p. 19]. Specifically, the bankruptcy court believed that appellant was conflating two distinct questions: (1) "how to perfect inventory that is subject to the state's certificate-of-title

[10] Though the Court notes that the bankruptcy court only explored the exception carved out via § 47-2-403(a), relating to a buyer in the ordinary course of business, and authorization by the secured party, GFB [*See* Doc. 6-10, pp. 19–27].

law[;]" and (2) "what happens when property is transferred in contravention of the rights of the secured parties under the UCC" [*Id.*]. But do a secured party's rights not turn on perfection of their security interests? If GFB had certificates-of-title, and not a filed financing statement, when the Subject Trailers were inventory held for sale or lease by Sales, who was in the business of selling trailers, GFB would not have security interest in the Subject Trailers. *See* Tenn. Code Ann. § 47-9-311 cmt. 4 (providing, in reference to subsection (d), that "[c]ompliance with a certificate-of-title statute is both unnecessary and ineffective to perfect a security interest in inventory to which this subsection applies"). Or if a secured party had perfected its security interest in a debtor's trailer inventory via a filed financing statement, and then the debtor took trailers out of its inventory and used them as equipment, the secured party would no longer have rights in such trailers as its security interest would no longer be effective. *See id.* ("If the debtor takes goods of this kind out of inventory and uses them, say, as equipment, a filed financing statement would not remain effective to perfect a security interest.").

The Court now turns to the actual text of § 47-9-507(a): "A filed financing statement remains effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and in which a security interest . . . continues, even if the secured party knows of or consent to the disposition." What is readily absent from the text of this section is any variant of the word "perfection." While perhaps not meaningful in isolation, when read in context, the absence becomes profound in meaning. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*,

145 (2012) ("Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides context for each of its parts."); *Salazar v. Paramount Global*, 133 F.4th 642, 650 (6th Cir. 2025) ("[O]ften the meaning of a word or phrase 'may only become evident when placed in context.'" (quoting *Sackett v. EPA*, 598 U.S. 651, 674 (2023))); *Biden v. Nebraska*, 600 U.S. 477, 511–12 (2023) (Barrett, J., concurring) (noting that language takes meaning from context). Specifically, compare the text of § 47-9-507(a) to the text of § 47-9-507(c):

> (c) Change in debtor's name. If the name that a filed financing statement provides for a debtor becomes insufficient as the name of the debtor under § 47-9-503(a) so that the financing statement becomes seriously misleading under § 47-9-506:
>
> (1) The financing statement is *effective to perfect* a security interest in collateral acquired by the debtor before, or within four (4) months after, the filed financing statement becomes seriously misleading; and
>
> (2) The financing statement is *not effective to perfect* a security interest in collateral acquired by the debtor more than four (4) months after the filed financing statement becomes seriously misleading, unless an amendment to the financing statement which renders the financing statement not seriously misleading is filed within four (4) months after the financing statement became seriously misleading.

Tenn. Code Ann. § 47-9-507(c)(1) (emphasis added). As one can see, just two subsections down from § 9-507(a), the drafters used the phrase "to perfect" to modify what "effective" meant. Thus, if the drafters so intended for a filed financing statement to remain "effective to perfect" a security in collateral that has been sold or otherwise disposed of, even when such perfection method no longer applied to such collateral, they

very well could have included "to perfect" in § 47-9-507(a). *See* Stephen L. Sepinuck, *Survey—Uniform Commercial Code: Personal Property Secured Transactions*, 80 Bus. Law 1317, 1323 (2025). But the drafters did not. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 450 (1999) (citation omitted) ("It is unlikely that the drafters of legislation . . . would have used two distinctly different forms of words for the same purpose."); *Duran v. Sara Lee Corp.*, No. 1:11-CV-313, 2013 WL 12308200, at *3 (W.D. Mich. May 3, 2013) ("[T]here is no basis to attribute to the drafters of the Rule an intent to use the same word in the same Rule, within a few lines of each other, to mean different things. Such a reading would be at odds with the 'presumption that a given term is used to mean the same thing throughout a statute'—a presumption that is 'surely at its most vigorous when a term is repeated within a given sentence.'" (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994))). Accordingly, the text alone leads the Court to believe that the bankruptcy court's interpretation of § 47-9-507(a) is mistaken.

The Official Comments only further persuade the Court to its ultimate conclusion. Notably, "Tennessee courts generally give 'substantial deference' to the Official Comments." *In re Stetson & Assocs., Inc.*, 330 B.R. 613, 621 (Bankr. E.D. Tenn. 2005) (quoting *LeTellier v. LeTellier*, 40 S.W.3d 490, 493 n.2 (Tenn. 2001)); *see generally In re Hayes*, 376 B.R. 655, 669 (Bankr. M.D. Tenn. 2007) ("In addition to enacting most of UCC Revised Article 9, the Tennessee legislature copied the Reporter's Comments to the UCC revisions."). "[W]hile not binding, [they] are very persuasive in interpreting the

statute to which they apply." *Id.* (internal quotation marks omitted) (alterations in original) (quoting *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997)); *accord Wakefield v. Crawley*, 6 S.W.3d 442, 447 (Tenn. 1999) (citation omitted) ("While not controlling authority, the Official Comments to the UCC provide guidance in construing statutory language and offer assistance in discerning the intent of the legislature in adopting the statutory scheme.").

First, Comment 3 to § 47-9-507, which focuses on subsection (a), provides that such subsection "clarifies the third sentence of former Section 9-402(7) by providing that a financing statement remains effective following the disposition of collateral *only* when the security interest . . . continues in that collateral." Tenn. Code Ann. § 47-9-507 cmt. 3 (emphasis added). This one sentence is only further confirmation that § 47-9-507(a) is not a "perfection" rule as it signals that the continuation of a security interest is entirely separate from the purpose of subsection (a). In other words, subsection (a) does not itself continue a security interest as the bankruptcy court suggested; rather, "only when" a security interest continues does a filed financing statement remain effective under subsection (a). Here, GFB's security interest could not have continued because it did not, upon the disposition of the Subject Trailers, have certificates-of-title as required under Tennessee Code Annotated § 47-9-311(a)(2)(A). Thus, with no continuing security interest in the collateral, GFB's financing statement could not have remained effective following the disposition of the Subject Trailers.

Comment 3 to § 47-9-507 also provides that a security interest "[n]ormally . . . does continue after disposition of the collateral." Of course, the word "normally" leaves space for a security interest to not continue after the disposition of collateral, as is the case here. In the same vein, Comment 3 later states that "[s]ubsection (a) addresses only the sufficiency of the information contained in the financing statement. A disposition of collateral may result in loss of perfection for other reasons." Again, the Official Comments readily suggest that disposing of collateral, through sale or other means, can cause perfection to be lost and in turn, for a security interest to cease.

Stephen L. Sepinuck, a former Chair of the American Bar Association's UCC Committee who also served as an Associate Reporter for the project that produced the 2022 UCC Amendments [*see* Doc. 4, p. 21 n.1], likewise uses the Official Comments to confirm that, were § 47-9-507(a) meant to act as the bankruptcy court interpreted, it "would have been drafted to say that 'a filed financing statement remains effective to perfect.'" Sepinuck, *supra*, at 1323.[11] Specifically, Sepinuck uses a "highly analogous situation: when a debtor in the business of selling titled inventory starts using some of the goods as equipment[:]"

> Prior to such a change in use, a security interest in the titled inventory could be perfected by filing a financing statement, not by compliance with the certificate-of-title statute. Immediately after the use changes and the goods become equipment, section 9-311(d) ceases to apply and compliance with

[11] As of the date of his article, Sepinuck was Special UCC Advisor at Paul Hastings, LLP, and an adjunct professor at Maine Law School. Sepinuck, *supra*, at 1317 n.a1. Sepinuck has also served as the American Bar Association Advisor to the Joint Review Committee for Article 9 of the UCC. *See Stephen L. Sepinuck: Biography*, Vanderbilt Univ., https://law.vanderbilt.edu/bio/stephen-sepinuck/ [https://perma.cc/9723-MTQ4] (last visited Sept. 28, 2026).

> the certificate-of-title statute becomes the only way to perfect. Hence, a security interest previously perfected by filing a financing statement becomes immediately unperfected. Comment 4 expressly so indicates. Moreover, it does so even though section 9-507(b) provides that a filed financing statement "is not rendered ineffective" if the information provided in it becomes seriously misleading (e.g., if the financing statement identifies the collateral as ""inventory" but, after the financing statement was filed, the collateral becomes "equipment"). In sum, the Official Comments are clear that section 9-311(a) (a perfection rule) controls over section 9-507(b) (a filing rule). There is no reason to think that the primacy of section 9-311 somehow falters merely because the post-perfection change in circumstances is a sale, to which section 9-507(a) applies, rather than a change in the collateral's classification, to which section 9-507(b) applies.

*Id.* at 1324 (internal footnotes omitted). Sepinuck's examination and reasoning, in conjunction with the Court's analysis above, demonstrate how the Official Comments to the UCC do not lend to the interpretation of the bankruptcy court.

Finally, the Court agrees with appellant that the bankruptcy court's interpretation of § 47-9-507(a) could lead to unfortunate results, e.g., a purchaser later down the road being unable to ascertain whether a perfected security interest already exists in, say, a car. And, as Sepinuck explains, this would undermine "a central purpose of the certificate-of-title statute" which is to create a "collateral-based filing system" "designed so that a party interested in acquiring an interest in [ ] titled goods can rely on the certificate." Sepinuck, *supra*, at 1324–25.

Thus, based on all the above, the Court concludes that the bankruptcy court erred in finding that GFB's security interest in the Subject Trailers had priority over FMEF's security interest in the Subject Trailers. Secured transactions provisions inform us that, at

the time of disposition, GFB no longer had a perfected security interest. Thus, granting summary judgment in favor of appellee GFB was not warranted.[12]

## IV. Conclusion

Accordingly, the bankruptcy court's decision will be **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this memorandum opinion.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

[12] As a final note, and as mentioned *supra*, appellee attempts to devalue appellant's argument by submitting that appellant has offered no case law in support of its proposition [Doc. 5, pp. 13–14, 26]. But the Court finds that this argument carries no weight, as neither party, not even the bankruptcy court, could identify a case in which this precise scenario played out. Similarly, to the extent appellee argues that the appellant's analogies hold no weight [*see id.* at 28], this too disregards the novel facts of this case. Furthermore, appellee's argument cuts both ways given appellee can point to no analogy that bodes for its position.